**SELECT INSURANCE COMPANY,**
Petitioner,

v.

**Thomas Earl BOUCHER, Respondent.**

No. B-6767.

Supreme Court of Texas.

Feb. 8, 1978.

Mike Phillips, Robert G. Taylor, II, and Susan E. Crowley, Houston, for petitioner.

Gerald H. Buttrill, Miller, Gann & Perdue, Houston, for respondent.

SAM D. JOHNSON, Justice.

This case presents the question of proper submission to the jury of a workmen's compensation [1] cause of action under Rules 277 and 279 of the Texas Rules of Civil Procedure. Thomas Boucher sought workmen's compensation solely under the theory of total incapacity. Select Insurance Company pleaded partial incapacity as a defense. The trial court submitted only the issues concerning total incapacity and refused to submit issues or the tendered instructions on partial incapacity. Based upon jury answers to special issues, the trial court awarded Boucher compensation for six and three-quarters years of total incapacity. Select appealed, alleging error in the trial court's failure to submit issues or the tendered instructions on partial incapacity. The trial court judgment was affirmed by the court of civil appeals. 551 S.W.2d 67. We affirm the judgment of the court of civil appeals.

While working for New Process Steel Corporation, Thomas Earl Boucher was struck in the back by a hook from a twenty-

---

1. This court is aware that House Bill 455 as amended was enacted by the 65th Legislature. In Section 1 the Bill provides that "[t]he term 'workmen's compensation' shall hereafter be known as 'workers' compensation,' . . ." However, as the Bill became effective in August 1977, subsequent to rendition of the lower court decisions in the instant case, the use of such terminology herein would be inappropriate.

ton crane. After several consultations with various doctors, he was hospitalized for psychiatric evaluation which revealed he was suffering from "gross stress reaction manifested by psychotic decompensation." In the trial court Boucher pleaded and sought recovery on the theory that he was totally and permanently disabled. Boucher did not seek recovery for partial incapacity. Select Insurance Company pleaded and defended on the theory of partial incapacity. Select asserted that the injuries suffered by Boucher, if any, resulted in partial disability for only a short period of time and that Boucher's earning capacity after the accident was as much or more per week as it had been before the date of the alleged injury so that there was no reduction or decrease in his wage earning capacity. Select tendered issues under its defense of partial incapacity which the court refused to submit. Select also tendered an instruction defining the term "partial incapacity" which the court likewise refused to submit. The jury found that Boucher's injury was the producing cause of his total incapacity. The jury further found that the total incapacity was temporary, lasting for six and three-quarters years. Based upon such jury findings, the trial court awarded Boucher workmen's compensation for six and three-fourths years of total incapacity. This judgment was affirmed by the court of civil appeals.

The court of civil appeals reasoned that Rule 277 prohibits the submission of inferential rebuttal issues, but allows the submission of such explanatory instructions or definitions as shall be proper to enable the jury to reach a verdict. The court of civil appeals, therefore, held that the trial court was correct in refusing to submit the issues on partial incapacity in that such were inferential rebuttal issues. Furthermore, the court of civil appeals determined that under Rule 279 Select Insurance Company had the burden of tendering an instruction in substantially correct form. The court of civil appeals held that Select failed to tender such an instruction in substantially correct form; therefore, the trial court's failure to submit the instruction was not reversible error.

Select Insurance Company appeals the judgment of the court of civil appeals on two grounds. The first ground challenges the court of civil appeals' determination that the tendered issue on partial incapacity is an inferential rebuttal issue. The second ground questions the court of civil appeals' finding of no reversible error in the trial court's failure to submit the definition of "partial incapacity" tendered by Select Insurance Company.

 The trial court submitted special issues to the jury which presented the issue of total incapacity and required a determination of whether the total incapacity, if any, was temporary or permanent. Boucher did not request instructions on partial incapacity. However, Select Insurance Company did request the following special issues raising the question of partial incapacity:

"2. Was the injury a producing cause of any partial incapacity? (Answer by stating 'yes' or 'no').

If it was, then answer Nos. 2A, 2B and 2C below:

"2A. Find the beginning date of partial incapacity. (Answer by stating the month, day and year).

"2B. Find the duration of partial incapacity. (Answer by stating 'Permanent' or by stating ending date)."

[The record before this court does not reflect the substance of issue 2C, if any such issue was tendered by Select.]

The court of civil appeals held that the issues tendered by Select were inferential rebuttal issues and that their submission was prohibited by Rule 277. Specifically, the court of civil appeals relied upon that portion of Rule 277 which provides: "Inferential rebuttal issues shall not be submitted." Select Insurance Company argues that the issues should have been submitted as they constituted an independent defense which was raised by the evidence and they were not inferential rebuttal issues. Select Insurance Company argues that the word-

ing of Rule 277 clearly demonstrates partial incapacity issues are not considered inferential rebuttal issues, relying upon that portion of the Rule which provides:

"The court may submit an issue disjunctively where it is apparent from the evidence that one or the other of the conditions or facts inquired about necessarily exists. For example, the court may, in a workmen's compensation case, submit in one question whether the injured employee was permanently or only temporarily disabled."

The quoted language was retained in Rule 277 when it was amended in 1973. Such provision, however, is not persuasive or controlling in the instant case. Circumstances triggering the usage of disjunctive issues are distinguishable from those circumstances which create inferential rebuttal issues. The submission of disjunctive issues is appropriate where two alternate grounds of recovery are developed through the pleadings and the submitted issues. Under certain circumstances, issues on partial and total incapacity may be submitted in one disjunctive issue where potential recovery under either theory is developed by the other special issues submitted. Under other circumstances, as in the instant case, issues on partial incapacity may be only defensive and constitute inferential rebuttal issues which are prohibited by Rule 277.

In the case at bar the trial court was not presented with two alternate grounds of recovery. The only ground of recovery was presented by the plaintiff Boucher, and that ground was total incapacity. Further, Boucher tendered no issues except those pertaining to total incapacity. On the other hand, it was the defendant Select Insurance Company which tendered the quoted issues on partial incapacity. These tendered issues on partial incapacity were not disjunctive issues; these issues, as requested, constituted a defense and did not develop an alternate ground of recovery.

An inferential rebuttal issue is one which seeks to disprove the existence of an essential element submitted in another issue. *Wirtz v. Orr*, 533 S.W.2d 468 (Tex.Civ.

App.—Eastland 1976, writ ref'd n. r. e.). Inferential rebuttal issues have been variously referred to as denial issues or argumentative denials rather than direct negatives. *Scott v. The Atchison, Topeka and Santa Fe Railway Company* (Tex.1978). The reasoning behind such labels is that "they disprove by establishing the truth of a positive factual theory which is inconsistent with the existence of some factual element of the ground of recovery or defense relied upon by the opponent, and are therefore to be distinguished from a flat denial . . . ." Hodges, *Special Issue Submission in Texas*, Section 15, at 40. The basic characteristic of an inferential rebuttal is that it presents a contrary or inconsistent theory from the claim relied upon for recovery. Partial incapacity has repeatedly been viewed as an inconsistent or contrary theory to a claim of total incapacity. In *Wright v. Traders & General Ins. Co.*, 132 Tex. 172, 123 S.W.2d 314 (1939), the court stated:

"It is true that a finding of total incapacity excludes the converse of partial incapacity, and vice versa. In that sense converse issues are involved. The issues submitting the two inquiries as to the result of the injuries,—one whether total and the other whether partial,—are converse, but not opposite." 123 S.W.2d 314 at 317.

Similarly, in *Commercial Standard Ins. Co. v. Brock*, 167 S.W.2d 281 (Tex.Civ.App.—Amarillo 1942, writ ref'd w. o. m.), the court noted the distinct relationship between total and partial incapacity:

"[A] claimant 'in order to recover for total disability must prove by preponderance of the evidence that his disability is not merely partial.' *Southern Underwriters et al. v. Boswell*, 138 Tex. 255, 158 S.W.2d 280, 282. . . . [T]he finding of total incapacity necessarily required the appellee to prove by a preponderance of the evidence that his disability was not merely partial . . . ." 167 S.W.2d 281 at 287.

Under the circumstances of the instant case, the issues relating to partial incapaci-

ty were inferential rebuttal issues which are prohibited by Rule 277. *Scott v. The Atchison, Topeka and Santa Fe Railway Company, supra.*

Alternatively, Select Insurance Company argues that even should this court determine that partial incapacity is an inferential rebuttal issue, the Insurance Company was entitled to its tendered definition of "partial incapacity" and that such definition was in substantially correct form. The definition tendered was as follows:

> " 'PARTIAL INCAPACITY' means any degree of incapacity less than total incapacity; or, whereby a person suffers a reduction in earning capacity. A person cannot have both total and partial incapacity at the same time."

Rule 279 provides in part:

> "Failure to submit a definition or explanatory instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or explanatory instruction has been requested in writing and tendered by the party complaining of the judgment."

The court of civil appeals upheld the trial court's rejection of the definition of "partial incapacity" tendered by Select Insurance Company because the definition was not substantially correct, and under Rule 279 no ground for reversal of the trial court judgment was presented. The court of civil appeals reasoned the definition was not substantially correct in that: (1) the insertion of the word "or" in the definition rendered it confusing; and (2) the definition further failed to define the term "earning capacity."

Select Insurance Company contends it tendered a definition defining "partial incapacity" which was substantially correct and that similar disjunctive language has been used in defining "partial incapacity" in *Indemnity Insurance Co. of North America v. Craik,* 162 Tex. 260, 346 S.W.2d 830 (1961), and *Southern Underwriters v. Schoolcraft,* 138 Tex. 323, 158 S.W.2d 991 (1942). Furthermore, Select argues that no recovery was sought under the theory of partial incapacity so it was not necessary for the term "earning capacity" to be defined.

The instruction tendered by Select Insurance Company would allow a finding of partial incapacity under either one of two theories: (1) a finding of a degree of incapacity less than total; or (2) a finding of a reduction in earning capacity. Neither theory of partial incapacity, in the form in which it was requested, properly conveys the intent of the Workmen's Compensation Act. More importantly, neither theory, standing alone, presents a proper basis for recovery. Select is correct in its argument that a definition in disjunctive form was utilized to define "partial incapacity" in both of the cases cited, as well as in the *Texas Pattern Jury Charges.* However, these definitions of "partial incapacity" do not create the two theories of recovery which are presented by the definition tendered by Select Insurance Company.

The definition of "partial incapacity" used in the *Texas Pattern Jury Charges* employs conjunctive language in enunciating the elements of partial incapacity which require (1) an injury or incapacity less than total *and* (2) a reduction in earning capacity. The disjunctive language contained in the definition relates specifically to alternate circumstances which result in loss of earning capacity; *i. e.,* (1) the fact that a party can only perform part of his usual tasks *or* (2) the fact that a party can now perform labor of a less remunerative class. The *Texas Pattern Jury Charges* defines "partial incapacity" in Section 22.02 as follows:

> "Partial incapacity is any degree of incapacity less than total incapacity, *and* means that a person's earning capacity is reduced because he can perform only part of the usual task of a workman or can only do lower paying work than he could do before his injury, but can get and keep employment suitable to his condition." 2 State Bar of Texas, Texas Pattern Jury Charges (1970). [Emphasis added.]

Consequently, under the quoted definition, a party may secure a finding of partial incapacity when there is or has been both a degree of incapacity less than total *and* a

reduction in earning capacity. On the other hand, the definition as tendered by Select would reduce the burden of proof for the party pleading partial incapacity, requiring the party only to prove one of these two essential elements to support a finding of partial incapacity. This court specifically approves the definition of "partial incapacity" as drafted in the *Texas Pattern Jury Charges* and holds that it comports with the intent of the Workmen's Compensation Act. Therefore, the disjunctive wording of the definition as tendered by Select was inaccurate. Accordingly, the court of civil appeals was correct in holding that the definition was not substantially correct and should not have been submitted to the jury.

■ In addition, the court of civil appeals held that the tendered instruction was insufficient since it did not define the term "earning capacity." Select Insurance Company argues that it was not necessary to define the term as recovery under a theory of partial incapacity was not affirmatively sought. Furthermore, Select argues that the courts have upheld instructions defining "partial incapacity" as a reduction in earning capacity where there was no additional definition of "earning capacity." *Employers' Liability Assur. Corporation v. Young*, 203 S.W.2d 822 (Tex.Civ.App.—Amarillo), *per curiam*, 146 Tex. 168, 204 S.W.2d 833 (1947); *Southern Underwriters v. Schoolcraft, supra*. The cases relied upon by Select predate the 1957 amendment to the Workmen's Compensation Act. Prior to 1957 the majority of the courts were determining partial incapacity on a percentage or degree basis. Consequently, recovery for partial incapacity was computed as the percentage of disability times the average weekly wages before the injury. Wallenstein, *A Special Issue Quandary—Submitting "Partial Incapacity" in Workmen's Compensation*, 21 Sw.L.J. 513, 520–21 (1967). In 1957 the Workmen's Compensation Act was amended, emphasizing that partial incapacity was to be measured solely on the basis of reduction of earning capacity, not by percentage of disability. Accordingly, the meaning of the term "earning capacity" became and is central to a finding of partial incapacity. The term "earning capacity" has a somewhat technical meaning and is easily confused to mean actual wages earned. Therefore, an understanding of the meaning of "earning capacity" is essential to the proper determination of partial incapacity.

Select argues that in *Young* and *Southern Underwriters* the courts upheld instructions defining "partial incapacity" without defining "earning capacity." Neither of these decisions specifically state that the term "earning capacity" was not defined. In addition, the definition of "partial incapacity" used in these cases conveyed the meaning of "earning capacity" by implication through additional wording in the definition. Similarly, the *Texas Pattern Jury Charges, supra*, uses the term "earning capacity," but places it in an interpretive context:

> "[A] person's earning capacity is reduced because he can perform only part of the usual task of a workman or can only do lower paying work than he could do before his injury, . . . ."

The definition of "partial incapacity" as tendered by Select used the term "earning capacity." The term was not further defined or placed in an explanative context. Accordingly, the instruction as submitted did not provide guidance to the jury which would enable it to reach a proper verdict. Therefore, the court of civil appeals was correct in holding that Select's failure to include a definition of "earning capacity" in its requested instruction on partial incapacity resulted in the tendering of an instruction which failed to meet the standards of substantially correct submission.

We hold, under the posture of the instant case, that the defensive issue of partial incapacity is an inferential rebuttal issue and that by virtue of Rule 277 Select Insurance Company was not entitled to its submission. Select Insurance Company would have been entitled to the submission of a definition of "partial incapacity" if one in substantially correct form had been requested. We hold that no definition of

"partial incapacity" in substantially correct form was tendered to the court. Accordingly, we affirm the judgment of the court of civil appeals.

McGEE, J., notes his dissent.